304 So.2d 583

**H. D. OLIVER**

v.

**Viola PERRY and Clifford Perry.**

**SC 517.**

Supreme Court of Alabama.

Dec. 5, 1974.

Rehearing Denied Jan. 2, 1975.

Rives, Peterson, Pettus, Conway & Burge and Edgar M. Elliott, Birmingham, for intervenor, Nationwide Ins. Co.

Roscoe B. Hogan and John F. Kizer, Jr., Birmingham, for appellant.

FAULKNER, Justice.

On January 25, 1970, Oliver suffered se-vere personal injuries resulting from a col-

lision between the automobile in which he was riding as a passenger, driven by Wilfred Gunter, and an automobile driven by Clifford Perry. This automobile was owned by Viola Perry. The collision occurred at the intersection of New Finley Avenue and Fourth Place, West, Birmingham, Alabama.

At the time of the accident, Clifford Perry was operating an uninsured automobile, but Gunter and Oliver had uninsured motorist coverage. Oliver notified Nationwide, the insurer of Gunter, that he would look to it for the ultimate satisfaction of any judgment he might obtain against the Perrys. There was no dispute from Nationwide that Oliver was within the coverage provided by the policy issued to Gunter. Alleging an interest in the suit filed June 10, 1970, Nationwide filed a complaint of intervention on September 24, 1970. Nationwide, thereupon, joined the suit on the side of the defense, hoping to defeat the claim entirely, or at least mitigate damages. However, Nationwide also had interests adverse to defendants since it asked to be subrogated to the rights of the plaintiff upon its payment of any judgment for damages. Nationwide then asked for judgment over and against the defendants to the extent of any amount it would be required to pay toward any judgment obtained by Oliver against defendants. The trial ended in a verdict for defendants and Oliver has taken this appeal on the principal ground that the trial court erred in permitting Nationwide to convey to the jury that Clifford Perry had no liability insurance at the time of the accident, and that the defendant would be ultimately liable to Nationwide for any judgment against him.

Prior to the trial, the trial judge and attorneys for all parties met in chambers to arrive at some stipulation concerning the issue of insurance and how it would be handled at the trial. No agreement was reached. During the opening statement by counsel for Nationwide the following colloquy took place:

"MR. ELLIOTT: May it please the Court and ladies and gentlemen of the jury, I occupy, I suppose, a rather unique position in this case. And, let me see if I can explain to you the position that the Nationwide Insurance Company has in this case so you can understand as we go forward the participation that everyone makes.

"Mr. Oliver was riding as a passenger in the automobile of Mr. Gunter. Now, Mr. Gunter, the driver of that car, had a policy of what, for the lack of a better name, is called uninsured motorist coverage. I don't know whether you all are or are not familiar with uninsured motorist coverage. But, most everyone in the state has it. The effect of that is, and it applied to Mr. Oliver, that if a person is injured as a result of the negligence *or as a result of the fault of someone who doesn't have any liability insurance*—now, liability insurance is what pays the other fellow when you are at fault—but, if you are hurt under uninsured motorist coverage *as a result of somebody's fault who had no liability insurance*—

"MR. HOGAN: Your Honor, we respectfully object to counsel's continuous argument referring to the defendant as not having liability insurance. We respectfully object to the counsel's remarks. He has gone into an issue that is not an issue to be considered by the jury, as to this lawsuit. And, as I understood Your Honor, only with respect to the liability and as to the damage, injuries and damages involved and for him to say that this man has no insurance, I think that's his own interpretation of what happened. It is a legal interpretation of that. And, going into it in opening statement can serve no purpose and I didn't understand that to be what Your Honor indicated as being proper or legal and we object to it, Your Honor.

"THE COURT: Overruled.

"MR. HOGAN: We reserve an exception.

"MR. ELLIOTT: As I was saying, Mr. Oliver is the beneficiary of an uninsured motorist policy which Mr. Gunter had on his automobile simply by virtue of being in the car.

"Now, that policy says this, basically—

"MR. HOGAN: May we have a continuing objection to this if Your Honor please is going to allow it brought out? Each one of these statements, could I have—

"THE COURT: With reference to the statement of the position of the intervenor, yes. I will give you a standing exception on that.

"MR. HOGAN: Thank you, Your Honor.

"THE COURT: Further, I think it ought to be stated now they are in here as an intervenor and I think it is proper that the jury know why and how it comes about. And, I will instruct them, of course, as to what the law is about it later.

"MR. ELLIOTT: That policy basically says this to Mr. Oliver, up to the extend [sic] of the coverage available under the policy, Mr. Oliver, if you are injured *as a result of the fault of somebody who has no liability insurance,* and up to the extent of that coverage, we will pay to you what you are legally entitled to recover from *somebody who has no insurance.* But, we then take the assignment of that right, what we call subrogation, and ourselves pursue it against the uninsured motorist.

"What happened in this case is Mr. Hogan filed on behalf of Mr. Oliver a suit against Clifford Perry and told us about it. *Clifford Perry has no liability insurance. There isn't any question*

*about that.* So, when we found out the suit was pending—

"MR. HOGAN: We object to this statement. He said 'no question about that.' *We have got, also another policy of insurance involved.*

"MR. ELLIOTT: We object to that. There is no other.

"THE COURT: Well, let's take a recess."

(Emphasis added.)

Oliver argues that it was error to allow counsel for Nationwide to convey to the jury that the defendant had no liability insurance at the time of the accident and would ultimately be liable to the intervenor for any judgment rendered against him. It is contended that these remarks were prejudicial to the plaintiff and enlarged the scope of the lawsuit. We have many decisions in this state that hold it is reversible error to permit attempts to apprise the jury of the fact that the defendant is insured and will not be personally responsible for any judgment against him. Colquett v. Williams, 264 Ala. 214, 86 So.2d 381 (1956); Thorne v. Parrish, 265 Ala. 193, 90 So.2d 781 (1956); Sars v. Nichols, 275 Ala. 17, 151 So.2d 739 (1963).

Here, we have the other side of the coin. Professor McCormick finds that the majority of the jurisdictions in the country have tended to exclude such evidence.

"May the defendant give evidence that he is not protected by insurance? In view of the premise on which the rule prohibiting evidence of insurance is based that there is danger that the fact will be used prejudicially by the jury, and in view of the inevitable assumption by jurors today that a defendant is probably insured, fairness seems to demand that a defendant be permitted to avoid the danger by showing that he is not insured. The courts, however, have considered that the balance lies the .other way, and

have excluded the evidence, as 'a form of the inadmissible plea of poverty,' *except in cases where the plaintiff has injected the suggestion that the defendant is insured."* (Emphasis added.) McCormick on Evidence, 2d Ed., 1972, p. 481.

▮▮▮ We note that the plaintiff had the jury qualified as to State Farm Insurance Company, as well as Nationwide, even though State Farm had no place in the litigation whatsoever. It was the carrier of Oliver's own uninsured motorist coverage. In the excerpts above, counsel for Oliver stated that "we have got, also, another policy of insurance involved," when in fact no other insurance was involved. The appellant relies on the case of Mobile Cab and Baggage Co. v. Busby, 277 Ala. 292, 169 So.2d 314 (1964), where the question at hand was quite similar to the one in this case. There, during a heated exchange with opposing counsel, the defendant's attorney stated " 'there is absolutely no liability insurance on the part of the gentleman here . . .. He is self-insured and he pays for it out of his pocket.' " There was no reversal because the remarks were found to be reply in kind to earlier statements made by the plaintiff's attorney. However, Chief Justice Livingston did note that:

"Under certain circumstances, it is as objectionable in a suit for damages for defendant's counsel to tell the jury that the defendant is uninsured, thereby invoking sympathy for the defendant, as it is for plaintiff's counsel to say to the jury that the defendant is insured, thereby telling the jury that the defendant would not have to pay any judgment that it might render against him."

While the *Mobile Cab and Baggage* case is the rule in this state as to the point quoted above, it is clear that the rule is qualified by the words "under certain circumstances." This is reasonable because evidence of the presence of insurance is allowed when it is " . . . collateral to other material facts and is so associated with or interwoven with them as to be inseparable." Burnett v. Bledsoe, 276 Ala. 139, 159 So.2d 841, 843 (1964). While the lack of insurance would not be admissible as an independent fact, it can come in when closely tied to other factors. This is the case in the present situation. The *only* reason that Nationwide was involved in the suit was because Clifford Perry was uninsured. Since it had the right to intervene, it follows it should have the opportunity to tell the jury its reason for being there, and this necessarily entailed at least some mention of Perry's status. Our reading of what transpired does not convince us that Nationwide went overboard in this regard.

It is difficult to see how the dollar value of the plaintiff's case was prejudiced by the statements since the jury returned a verdict for the defendant. It never got to the question of whether the plaintiff's damages were worth more or less, because it found the defendant not negligent. The trial judge instructed the jury that the sole question before them was that of Perry's negligence, and not who would pay the judgment, matters of subrogation, and the like. This should have curtailed much of the influence the presence of the insurer may have had on the jury.

The remark of Mr. Elliott, "but, we then take the assignment of that right, what we call subrogation, and ourselves pursue it against the uninsured motorist," is not argued by the appellant as being objectionable. Therefore, we pretermit the consideration of the propriety of that part of the statement of Mr. Elliott, as well as the validity of a subrogation clause pertaining to personal injury in an uninsured motorist insurance policy since that issue likewise was not argued before this court.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.